**JILL WILLIAMS – State Bar No. 221793**
**YELENA BAKMAN – State Bar No. 294165**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 S. Grand Ave, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400 / (213) 228-0401 (fax)**
**jwilliams@crdlaw.com / ybakman@crdlaw.com**

Attorneys for Defendants,
County of Los Angeles,
Luis Cardenas and Elizabeth Ramos

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITZY P.; NILTON P.T.; BRIAN P.T.; AND BELLANIRA P., and through their Guardian Ad Litem, Richard L. Solomon, Esq. <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES, a public entity; JENNIFER MAGALLANES, an individual; ELIZABETH RAMOS, an individual; LUIS CARDENAS, an individual; NINOS LATINOS UNIDOS, INC., corporation duly organized under the laws of the State of California; MARCELA BAEZA, an individual; FERNANDO BAEZA, an individual; and DOES 1-25, <br><br> Defendants. | Case No.: <br><br> **NOTICE OF REMOVAL OF ACTION** <br><br> **[28 U.S.C. §1441, Federal Question]** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendants, County of Los Angeles, a public entity, and Luis Cardenas and Elizabeth Ramos, public employees, hereby remove to the United States District Court, Central District of California the state court action described below.

- 1 -
NOTICE OF REMOVAL OF ACTION

1.      On or about September 2, 2020, an action was commenced in the County of Los Angeles Superior Court, entitled <u>Mitzy P., et al. v. County of Los Angeles, et al.</u>, bearing the case number 20STCV33400.  Attached hereto as Exhibit "A" is a copy of the Complaint for Damages that was filed in that action.

2.      In the Complaint for Damages, the plaintiffs assert causes of action under federal law (42 U.S.C. § 1983), premised on alleged violations of the United States Constitution.

3.      Defendants Luis Cardenas and Elizabeth Ramos were served with the action on October 6, 2020.  Attached hereto as Exhibit "B" is a true and correct copy of the Summons served on these individual defendants.

4.      Defendant County of Los Angeles was served with the action on October 6, 2020.  Attached hereto as Exhibit "C" is a true and correct copy of the Summons served on the County of Los Angeles.

5.      Defendant Ninos Latinos Unidos, Inc. has also been served.

6.      These removing defendants are unaware of whether any other defendants have been served.

7.      All defendants who, to the knowledge of these removing defendants, have been served consent to removal.

8.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by the defendants pursuant to the provisions of 28 U.S.C. § 1441 (b) and (c), in that it involves claims for violations of 42 U.S.C. § 1983.

///
///
///
///
///
///

NOTICE OF REMOVAL OF ACTION

1    DATED:  November 4, 2020          CARPENTER, ROTHANS & DUMONT LLP

2

3

4                                      By:   /s/ Yelena Bakman
                                             JILL WILLIAMS
5                                            YELENA BAKMAN
6                                            Attorneys for Defendants, County of Los
                                             Angeles; Luis Cardenas; Elizabeth Ramos
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Kristin Escalante

Steven P. Beltran, Esq. (SBN 75813)
Beltran Smith LLP
8200 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90211-2348
Telephone: (323) 935-5795
Facsimile: (323) 935-5975
SBELTRAN007@GMAIL.COM

Rosa Hirji, Esq. (SBN 204722)
Alexander Rodriguez, Esq. (SBN 322700)
Law Offices of Hirji & Chau, LLP
5173 Overland Avenue
Culver City, CA 90230
Telephone: (310) 391-0330
Facsimile: (310) 943-0311
rosa@rkhlawoffice.com
alex@rkhlawoffice.com

Attorneys for Minor Plaintiffs, by and through
their Guardian Ad Litem, Richard L. Solomon, Esq.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MITZY P.; NILTON P.T.; BRIAN P.T.; & BELLANIRA P., by and through their Guardian Ad Litem, Richard L. Solomon, Esq<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a governmental entity; JENNIFER MAGALLANES, an individual; ELIZABETH RAMOS, an individual; LUIS CARDENAS, an individual; NINOS LATINOS UNIDOS, INC., a corporation duly organized under the laws of the State of California; MARCELA BAEZA, an individual; FERNANDO BAEZA, an individual; and DOES 1-25,<br><br>Defendants. | Case Number:  20STCV33400<br><br>COMPLAINT FOR:<br><br>1. GENERAL NEGLIGENCE;<br><br>2. PUBLIC EMPLOYEE LIABILITY; [Govt. Code §820]<br><br>3. VIOLATION OF MANDATORY STATUTORY DUTIES [Govt.Code § 815.6];<br><br>4. BREACH OF DUTY OWING BY REASON OF SPECIAL RELATIONSHIP WITH PLAINTIFFS;<br><br>5. VIOLATION OF FEDERAL CIVIL RIGHTS, [42 U.S.C. § 1983];<br><br>6. INTENTIONAL MISCONDUCT<br><br>Date:<br>Time: 8:30 a.m.<br>Dept.: |

Minor Plaintiffs, MITZY P.; NILTON P.T.; BRIAN P.T.; and BELLANIRA P., by and through

their Guardian Ad Litem, Richard L. Solomon, Esq., allege as follows:

Complaint for Damages

**GENERAL ALLEGATIONS**

1.  Plaintiff MITZY P., "MITZY", dob 1/25/2007 is at all times relevant a minor residing in the City of Lancaster, Los Angeles County, State of California.

2.  Plaintiff NILTON P.T., "NILTON", dob 9/19/2011 is at all times relevant a minor residing in the City of Lancaster, Los Angeles County, State of California.

3.  Plaintiff BRIAN P.T., "BRIAN", dob 12/23/2012 is at all times relevant a minor residing in the City of Lancaster, Los Angeles County, State of California.

4.  Plaintiff BELLANIRA "BELLA" P., dob 4/29/2014 is at all times relevant a minor residing in the City of Lancaster, Los Angeles County, State of California.

5.  Plaintiffs are biological siblings whose full names are known to Defendants, but are identified with pseudonyms in order to protect their anonymity.

6.  Plaintiffs are informed, believe and allege that defendant County of Los Angeles ("L.A. CO.") through its Department of Children and Family Services ("DCFS") is, and at all times herein mentioned was, a "public entity" as defined by California Government Code §811.2, to wit: a "county" and a "public agency" in the State of California and at all times herein mentioned defendant L.A. CO. was acting as a public agency and county within the provisions of the Government Code §811.2.

7.  Plaintiffs are informed, believe and allege that at all times herein mentioned, defendant L.A. CO., and DOE defendants 1 through 25, inclusive, each was and is a "Foster Family Agency," a "County Adoption Agency," and a "Child Welfare Agency," duly licensed by the State of California:

- To provide inter alia, foster care and permanent placement services to children, such as Plaintiffs, who have been judicially determined to be legal dependents of the Superior Court of defendant L.A. CO.,

- To provide professional support to foster parents, and

- To find foster home placement or other places of foster home placement of dependent children of defendant L.A. CO. for temporary or permanent care, adoptive placement and services related to adoption of minors within the agency's exclusive care, custody

and control, pursuant to the provisions of Welfare & Institutions Code §272, Welfare & Institutions Code §300, et. seq., Welfare & Institutions Code §16100, Health and Safety Code §§ 1500, et. seq., & 1502(a)(4), Government Code §811.2, and Title 22 of the California Code of Regulations, §80000 et. seq..

8.  Plaintiffs are informed, believe and allege that at all relevant times individual defendant JENNIFER MAGALLANES was a resident of Los Angeles County and employed by LACO as a Children's Services Worker, "CSW".

9.   Plaintiffs are informed, believe and allege that at all relevant times individual defendant ELIZABETH RAMOS was a resident of Los Angeles County and employed by LACO as a Children's Services Worker, "CSW".

10. Plaintiffs are informed, believe and allege that at all relevant times individual defendant LUIS CARDENAS was a resident of Los Angeles County and employed by LACO as a Supervising Children's Services Worker, "SCSW".

11. Plaintiffs are informed, believe and allege that at all times herein alleged Defendant NINOS LATINOS UNIDOS, INC., "NINOS FFA", was and is a private non-profit public benefit corporation duly organized under the laws of the State of California, with a principal place of business in Los Angeles County, California, to provide services as a  "Foster Family Agency" and "Adoptions Agency", licensed by the State of California and by Defendant LACO, to provide foster care and placement services for children who have been judicially determined to be legal dependents of LACO under the provisions of Welfare and Institutions Code sections 300 et seq., Health and Safety Code sections 1500 et seq., & 1502(a)(4), Government Code section 811.2, and Title 22 of the California Code of Regulations, sections 80000 et seq..

12. Plaintiffs are informed, believe and allege that individual defendants MARCELA BAEZA & FERNANDO BAEZA at all relevant times were residents of Los Angeles County, *certified* by NINOS FFA to meet all appropriate foster parent licensing requirements and were each acting in their capacities as foster parents to provide to provide foster care and placement services for Plaintiffs between approximately 10/25/2015 through approximately 3/3/2018, and pursuant to Title 22 Division 6 Chapter 8.8 and Chapter 9.5, Article 3 of the California Code of Regulations,

1   including but not limited to: protecting Plaintiffs from infliction of pain [22 CCR § 89372(a)(1)];

2   and to providing care and supervision appropriate to Plaintiffs [22 CCR § 89318(a)(1)].

3      13. Plaintiffs are informed, believe and allege that at all times mentioned between about

4   between approximately 10/25/2015 through approximately 3/3/2018, LACO's DCFS employed

5   NINOS FFA and Does 1-25 to provide, without limitation, certified foster home placement

6   and treatment services in the community, case management services and activities which

7   are mandated by the Division 31 regulations to be performed by LACO's DCFS' Children

8   Services Workers, "CSWs", who were assigned responsibility for Plaintiffs as Juvenile

9   Court dependents, and that by reason of its independent contract with LACO, co-defendant

10  NINOS FFA has assumed an independent and co-existing mandatory duty of care with LACO

11  to care for and protect Plaintiffs.

12     14. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES

13  1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will

14  amend this Complaint to allege the DOE defendants' true names and capacities when ascertained.

15  Plaintiffs are informed, believe and allege that each fictitiously named defendant is responsible in

16  some manner for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged,

17  were proximately caused by that negligence.

18     15. Plaintiffs are informed, believe and allege that at all times herein mentioned, each

19  defendant was the agent of and independent contractor of each and every other defendant and in

20  doing the things hereinafter alleged, each was acting within the scope of such agency and

21  independent contract and with the permission and consent of the other defendant.

22     16. On or about 2/19/2015 minor Plaintiffs MITZY, NILTON, BRIAN and BELLA, together

23  with three older siblings not parties to this litigation, were detained by DCFS from the home of

24  their mother, Wendy Trujillo, and, on information and belief, were variously placed into temporary

25  foster care, at the Plaintiffs' respective ages of 8 years old, 3 ½ years old,  2 ½ years old & 10

26  months old.

27     17. At no time prior to 2/19/2015 did any of the minor Plaintiffs have any history of sexual

28  abuse, physical abuse or emotional abuse or trauma.

18. On or about 4/29/2015 all minor Plaintiffs were legally declared to be dependents of the Los Angeles County Superior Court, and ordered placed under the exclusive care, custody and control of DCFS pursuant to Welfare and Institutions Code §§ 300, 361.5, and 362, and DCFS was duly ordered by the juvenile court to provide to Plaintiffs child welfare services as described in Welfare and Institutions Code §16501, through approximately 2/2/2019, when Juvenile Court jurisdiction was ordered terminated.

19. Plaintiffs are informed, believe and allege that at some time prior to 4/29/2015 through approximately 3/3/2018 minor Plaintiffs MITZY, NILTON, BRIAN and BELLA were placed together by DCFS, and continuously resided in defendant NINOS FFA's certified foster home of individual defendants MARCELA & FERNANDO BAEZA in Lancaster, California.

20. Plaintiffs are informed, believe, and allege that DCFS is mandatorily required by law pursuant to Welfare and Institutions Code §§ 16501.1 et seq., and by California Department of Social Services Regulations 31-201 et seq., to prepare and periodically update a "Child Placement Needs Assessment" ("Assessment") for each minor detained by DCFS.  The Assessment is required to be completed "[f]or each child being placed after talking with child, parents, relatives, etc., and reviewing case records . . .," and specifically warns CSWs to "not place sexually predatory child with vulnerable children.  Remember priority to meet child's needs . . .," and lists 40 specific factors such as alcohol usage, assaultive-other children, sexually acting out, sexually predatory, and others as "factors to be considered" and checked by DCFS.

21. Plaintiffs are informed, believe, and allege that in addition to the above Assessment, DCFS is also required by law pursuant to Welfare and Institutions Code §§ 16501.1 et seq., by California Department of Social Services Regulations 31-201 et seq., and by DCFS's own policy and regulations to prepare and periodically update for each detained minor a "Foster Child's Needs and Case Plan Summary" ("Summary").  The Summary is required to "[i]nclude all information which will help the Foster Caregiver understand the child's routine, needs and tendencies."

22. Plaintiffs are informed, believe, and allege that in addition to the above requirements, DCFS is required by law pursuant to Welfare and Institutions Code §§ 16501 et seq., and California Department of Social Services Regulations 31-075.3 and 31-200 et seq., to timely develop, prepare

and update for each detained minor an "Individualized Child's Case Plan" and to provide the minor a continuum of appropriate child welfare services.

23. Plaintiffs are informed, believe, and allege that at the time of each foster child's placement in each foster facility DCFS is to prepare an "Agency-Foster Parents Placement Agreement," that is to be signed by a representative of DCFS and the foster caregiver.  By such Placement Agreement, DCFS agrees, inter alia: to provide the foster parent with knowledge of the background and needs of the minor child necessary for the child's effective care, including Assessments, medical reports, and the identification of special needs within 14 days of placement; to develop an individualized case plan for each child; to share pertinent aspects with the foster parents; and to inform foster parents if a child placed by such agreement has any tendencies toward dangerous behavior to him/herself or others.  By such Placement Agreement, the foster parent agrees, inter alia: to accept the child's special problems; to provide a secure and stable environment for the foster child; to maintain a good moral character, exercise proper and effective care and control of the minor child; and to immediately notify DCFS of changes in the foster child's health, behavior and any changes in the household composition.

24. On or about 3/29/2015, during a monitored visit with the Plaintiffs, Plaintiffs' mother, Wendy Trujillo, photographed and reported to DCFS a large purple bruise and reddening on the right side of NILTON's eye and face extending down his cheek, and photos of scabbing and bruising to one of NILTON's arms and of a single bruise to NILTON's arm.

25. Beginning approximately 11/1/2017 Wendy Trujillo reported to DCFS that minor Plaintiffs BRIAN and BELLA were acting strangely at her monitored visits with them, BELLA not allowing Wendy Trujillo and the childrens' older sibling Cecilia to take BELLA to the bathroom, BELLA crying and screaming uncontrollably when Wendy Trujillo attempted to do so.  During that visit, Wendy Trujillo reported to DCFS' CSW JENNIFER MAGALLANES, that Wendy Trujillo observed BELLA walking like she had just gotten off a horse, crying, and not allowing anyone to touch her.  Wendy Trujillo attempted to take photographs of BELLA's private area but was told by CSW MAGALLANES not to as that would be pornographic.  Wendy Trujillo asked CSW MAGALLANES what she should do.  CSW MAGALLANES said she would inform the children's

assigned CSW ELIZABETH RAMOS, that perhaps BELLA had an infection, and that she would inquire of BELLA's foster mother (MARCELA) and report the incident to CSW RAMOS.

26. On 11/6/2017 Wendy Trujillo met with CSW RAMOS' supervisor, SCSW CARDENAS to inquire what CSWs MAGALLANES and RAMOS had reported relating to BELLA's behavior on 11/1/2017. Wendy Trujillo is informed and believes that between 11/1/2017 to 11/6/2017 SCSW CARDENAS had contacted DCFS's Regional Administrators, "R.A.s" Sharon Hitman, Martha Rocha, and /or Kimberly Brown Shipley. On 11/6/2017 SCSW CARDENAS told Wendy Trujillo that *no one had advised him of the situation*, that he would speak with CSW MAGALLANES, and that he would arrange for a forensic examination of BELLA.

27. Between 11/6/2017 to approximately 12/6/2017 Wendy Trujillo called CSW RAMOS' and SCSW CARDENAS' offices approximately 6 times, and visited their offices on 11/11/2017, 11/16/2017, 11/17/2017 & 12/6/2017 to inquire what follow up had been arranged. Neither CSW RAMOS nor SCSW CARDENAS ever was in or returned Wendy Trujillo's calls until approximately 12/6/2017.

28. On or about 12/6/2017 SCSW CARDENAS told Wendy Trujillo that no follow-up or forensic examination of BELLA had been ordered because there was no evidence on which to proceed.

29. Plaintiffs are informed, believe and allege that on or about 12/7/2017 the Juvenile Court ordered that Wendy Trujillo's children MITZY and two older siblings be moved from their foster placements and placed in the home of their mother.

30. On 3/3/2018 ,during a visit with BELLA, Wendy Trujillo photographed a red welt area on BELLA's low back. BELLA told Wendy Trujillo she had been spanked with a belt. Wendy Trujillo also took a photo of a raw scrape on BELLA's right cheek below her eye.

31. Plaintiffs are informed, believe and allege that on or about 3/3/2018 MITZY, NILTON, BRIAN, and BELLA were removed by DCFS from the NINOS FFA's certified foster home of defendants MARCELA & FERNANDO BAEZA, and ordered placed on an extended visit in the home of their mother, Wendy Trujillo.

32. Plaintiffs are informed, believe and allege that between approximately 4/29/2015 through

approximately 3/3/2018 DCFS investigated various Suspected Child Abuse Reports filed against the NINOS FFA's certified foster home of defendants MARCELA & FERNANDO BAEZA. The results of such investigations are known to Defendant LACO but unknown to Plaintiffs.

33. On 3/9/2018 Wendy Trujillo made a report to Deputy Telles of the Lancaster Sheriffs office, reported as **DR#: 018-04664-1131-149**, re suspected violation of Penal Code §273 AR. The results of such investigation are known to Defendant LACO but have not been made available to Plaintiffs to date.

34. On 3/13/2018 Wendy Trujillo made a report to Deputy Moore of the Lancaster Sheriffs office, reported as **DR#: 018-04947-1137-120**, re suspected violation of Penal Code §289; i.e. sexual penetration against victim's will. The results of such investigation are known to Defendant LACO have not been available to Plaintiffs to date.

35. On 4/12/2018 Wendy Trujillo made a report to Deputy Bueso of the Lancaster Sheriffs office, reported as **DR#: 018-07008-1126-120**, re suspected sexual crime against child. The results of such investigation are known to Defendant LACO but have not been available to Plaintiffs to date.

36. On or about 4/12/2018 DCFS re-detained both minor Plaintiffs BRIAN and BELLA from Wendy Trujillo and her prior visitation orders with them were modified after Wendy Trujillo reported to DCFS allegations of suspected physical and sexual abuse to both minor dependents while residing in their foster home.

37. On or about 4/12/2018, on Plaintiffs' information and belief, minor Plaintiffs BRIAN and BELLA were each examined and subjected to possible additional testing at Antelope Valley Hospital by Diane Hehrli, FNP for Sexual Assault, Reported (PEDS). The results of such examinations and testing are known to Defendant LACO but unknown to Plaintiffs.

38. On or about 4/12/2018, on Plaintiffs' information and belief, the Juvenile Court changed Plaintiffs MITZY, NILTON, BRIAN and BELLA's order *from an extended visit* with their mother, Wendy Trujillo, and ordered that those minors be placed in the home of their mother.

39. On or about 7/19/2018 Margherita Toscano, CSA/PA prepared her Final Report of a Forensic Examination of Plaintiff NILTON "Alex", which **History reads in pertinent part**:

*"Nilton "Alex" is a **6 year old** M here with mom for a forensic exam. ...Per DCFS referral: the child Nilton disclosed to his mother that the previous foster parent MARCELA used to make him eat his own vomit, yell at him for eating too much food, and lock him in the basement when he misbehaved.  Mother reports children were in the care of foster mom MARCELA BAEZA from 3/2015 to 3/3/2018.  During that time, her children were being abused physically and sexually by foster mom and her biological son Jesse.  Mother reports Alex, Brian and Bella are exhibiting anger, aggression, difficult time sleeping, nightmares, wants to stay away, bedwetting at night, and vomiting after every meal. The teacher per mother has also expressed concern about is aggression towards others.  Child returned to mother officially 7/6/2018.  Patient today disclosed foster mom MARCELA BAEZA would "hit me" on arms with open hand and would hit me with belt on my back".  He also disclosed foster mom would hit his younger sister Bella "got a red thing and purple thing on her back".  Per patient, foster mom would threaten to put him in time out on the garage if he told his mom. When asked if he was ever placed in time out in garage, patient said yes. It occurred multiple times, where he was placed in time out in the garage with the lights off. He also reports he was forced to sleep on the floor while the foster brother Jesse slept on a bed.  He denies any sexual abuse by MARCELA or Jesse today.  He reported Jesse touched Bella and she would yell "stop, no" (patient reacted this during exam).  He does state he is afraid of MARCELA and Jesse.  Currently, is happy to be home with mom and is not afraid of being with mom and siblings."*

**Assessment/Plan reads in pertinent part:**

*"Child sexual abuse, suspected, initial encounter:*

*Patient today denied history of sexual abuse.  However, patient disclosed sexual abuse against his younger sister by MARCELA and her son Jesse.*

*Also displaying signs of trauma as described by mother.*

*Recommending patient to be evaluated by mental health clinician specializing in trauma informed care.*

*Given today's disclosure of physical and sexual abuse occurring in home of MARCELA*

*BAEZA, there is concern for the safety of other children in the home...."*

*Patient disclosed physical abuse by MARCELA BAEZA. Given time frame, would not expect to find physical findings on exam today.*"

40. On or about 7/19/2018 Wendy Trujillo met and spoke with Nancy Campos, Victim Services Representative, Bureau of Victim Services, Los Angeles Sheriff's Department Special Victims Bureau, 1010 W. Ave. J, Lancaster, CA. 93534.

41. Plaintiffs are informed, believe and contend that beginning approximately 1/20/2017 minors MITZY, NILTON, BRIAN, and BELLA and their three older siblings were represented in Juvenile Court as its dependents by Court appointed attorney Robert L.Weiss.

42. Plaintiffs are informed, believe and contend that between approximately 11/1/2017 through 8/15/2018 MITZY's, NILTON's, BRIAN's, and BELLA's Court appointed attorney Robert L.Weiss knew and or should have known of Wendy Trujillo's concerns related to the minors' various CSWs and SCSWs concerning said minors' alleged mistreatment in foster care by their foster parents, MARCELA &/or FERNANDO BAEZA, and knew or should have known of the Los Angeles Superior Dependency Court's Juvenile Tort Policy, but Mr. Weiss failed to file any Welfare & Institutions Code § 317(e) report of such alleged mistreatment with the Court as required by the Court's Juvenile Tort Policy until approximately October, 2018, and then only in response to Wendy Trujillo's attorney, Steven P. Beltran's own Motion for Leave to file his own Welfare & Institutions Code § 317(e) report.

43. On or about 8/7/2018 Petitioners' counsel, Steven P. Beltran, had a telephone conference with Mr. Weiss, informing him of Mr. Beltran's intention to file his own Welfare & Institutions Code § 317(e) Report on behalf of the minors.

44. On 8/15/2018 Wendy Trujillo's counsel, Steven P. Beltran, filed Petitioner's own Motion for Leave to file a Welfare & Institutions Code § 317(e) Report on behalf of said minors, which Motion was set for hearing on 10/18/2018, with timely Notice mailed to Mr. Weiss and all other Counsel.

45. Between 8/7/2018/2018 through 10/18/2018 Petitioner's counsel Mr. Beltran received nothing from Mr. Weiss.

46. On 10/18/2018 the Court ordered that Wendy Trujillo's Welfare & Institutions Code § 317(e) Motion be taken off calendar and directed further inquiry directly to the Juvenile Court's Presiding Judge, Michael Levanas. Mr. Weiss stated to Wendy Trujillo's counsel Mr. Beltran that he had filed his own Welfare & Institutions Code § 317(e) Report for the 10/18/2018 hearing, but did not and would not provide Petitioner a copy of it.

47. On 11/8/2018 the Juvenile Court appointed Wendy Trujillo's counsel, Steven P. Beltran, as their Welfare & Institutions Code § 317(e) attorney.

48. On or about 2/2/2019 the Juvenile Court ordered that the dependent status of minors Plaintiffs MITZY, NILTON, BRIAN and BELLA be terminated and returned to the care, custody and control of their mother Wendy Trujillo. By that order, Mr. Beltran's authority granted him by the Juvenile Court under Welfare & Institutions Code § 317(e), for access to the minors' Juvenile Court and DCFS records, also terminated.

49. Between 11/8/2018 through 2/2/2019 Mr. Beltran was unable to complete his review of the Juvenile Court's and DCFS' records, and no GAL was appointed pursuant to Code of Civil Procedure §372 to prosecute any civil actions on behalf of the minor Plaintiffs outside of the juvenile court.

50. On 5/22/2019 Mr. Beltran filed Tort Claims with LACO for minors MITZY, NILTON, BRIAN and BELLA.

51. On 5/28/2019 LACO denied the minors' Tort Claims as not timely filed, and stated it would take no further action on their matters, and stated that the minors may apply to the court for relief pursuant to Government Code §946.6.

52. On 6/27/2019 the Plaintiffs filed their Petition for Order Relieving them from Claims filing Provisions of Government Code § 945.6 under LASC Case No. 19STCP02693.

53. Between approximately June 2018 through approximately July 2019 MITZY began attending psychological counseling at Children's Center, Lancaster, California.

54. As of approximately 7/2/2019 Wendy Trujillo reported the Plaintiffs MITZY, NILTON, BRIAN and BELLA to be suffering the following:

/

**MITZY**: (Then 12 years old).

Previous School: Discovery (Lancaster School District)

Current School: Fulton and Alsbury Academy of Arts and Engineering

Placed in foster care at age 7.

She has severe depression, does not want to shower, does not like to express her feelings or communicate.

She is doing well in school, but she closes herself in homework, reading books.

Does not want to leave her room or go anywhere, or have social interactions.

**NILTON:** (Then 7 years old).

School (Current): Discovery (Lancaster School District)

Was placed in foster care at age 3.

He suffered a severe beating on the face, with photos taken by mother.

Mom feels that this has caused speech problems, word coordination & concentration issues. When he smiles there is a dent on his face on where he was hit. She feels that when he was 3 years old he was quick, first to walk right away from all siblings. Now she sees him being slow. Personality, want to please everyone, is sentimental.

He has problems eating, due to trauma (stated that he was given spoiled food and forced to eat it, after eating he would vomit, and foster parent forced him to eat vomit.) Now any food that he eats makes him sick. His stomach hurts all the time after eating or says he does not like the food. Wendy Trujillo says she gives him medication to make him feel better.

Does not want to go to school.

Has had daytime wetting incidents at school.

**BRIAN**: (Then 6 years old).

School (Current): Discovery (Lancaster School District)

Was placed in foster care at age 2

He was sexually abused by the older minor who is the son of the foster care parent. This boy attended Discovery (same as BRIAN) and this caused him a lot of fear that has, in turn, created excessive absences from school.

He has self-injurious behaviors, biting and scratching self.

He cries a lot in school. Has had daytime wetting incidents at school, and going to school (when he has seen former foster parent).

Aggressive behavior with other students fights with them a lot.

**BELLA:** (Then 4 years old).

School (Previous): Tierra Bonita ES (Eastside Union School District) Pre-K

Was placed in foster care at 8 months.

Was sexually abused by the same older boy that abused BRIAN.

Has difficulty concentrating, cannot focus, displays compulsive and obsessive behavior, needs the same routine or breakdowns, needs things placed in a certain manner, if these are moved she breaks down, bedwetting.

Previously inappropriate behaviors with other kids, "want to play winnie" (how they refer to the sexual abuse) or tells other kids strange things, masturbation, and touching in public.

Mother states that the therapist has helped her with these behaviors.

The focus of therapy has been to make her conscious that these behaviors are not appropriate and that nobody should touch her inappropriately.

**WENDY TRUJILLO ASSESSMENT OF MINORS:**

Mother reports all minors are receiving tutoring in academics, they have fallen behind due to excessive absences.

Mother has thought about independent studies/home school, however, she feels that it is not good to isolate them from other children and people.

Mother requested evaluations in writing for NILTON & BRIAN on or about May 2017

and on or about Feb. 2018.

Mother also showed the forensic report to the school principal.

School principal told her that the issues her kids have are not related to special education and was told that they could not do anything about the boy (who sexually abused her kids) because he has a right to go to this school, and that she should consider moving her kids to another school.

Mother stated that she could not move them to another school because the school year had already started.

Mother also asked for an evaluation for BELLA and was told the same thing. Mother has received various letters due to excessive absences.

Mother has difficulty working because she needed to stay home and care for her kids, every time they missed school.

Mother has begun receiving help from a program PCRT that provides daycare at home.

Now when the kids miss school the program comes to her home and provide daycare.

55. On 9/16/2019 the Court appointed Richard L. Solomon, Esq., as Guardian Ad Litem for minors MITZY, NILTON, BRIAN & BELLA.

56. On 10/3/2019 the Court issued its original Summons on the minors' Petition for Order Relieving them from Claims filing Provisions of Government Code § 945.6 under LASC Case No. 19STCP02693.

57.  Between approximately August, 2019 through approximately December, 2019 Plaintiff MITZY attended Court referred psychological counseling with Javier Flores in Lancaster, California following the death of her older sibling Cecilia.  That counseling was suspended following MITZY's family's move and the COVID closures. MITZY is due to resume psychological counseling starting approximately 8/20/2020. MITZY relates the following about her abuse in the Baeza defendants' certified foster home:

• The Baeza home had about 4- 5 bedrooms and two stories and slept in the same bedroom upstairs;

• The Baeza's two older adult daughters, Francisca (17-18 years old) & Fernanda (adult),

shared one bedroom and never hit us, but were present sometimes when the Baezas hit us, and sometimes told MARCELA Baeza not to hit us;

• NILTON & BRIAN shared another bedroom with the Baeza's approximately 7-8 year old son Jesse;

• BELLA & I shared our own upstairs back bedroom in the Baeza home upstairs;

• The Baezas did not hit the me or my brothers and sister until about the first month after we moved there and I told MARCELA not to hit us a couple of times at the start;

• I also told FERNANDO Baeza not to hit us at the start;

• MARCELA Baeza usually hit me with a belt, or an open hand. She also used a shoe or a plastic clothes hanger, on my face, chest, back, both legs, both arms and both hands, usually a couple of hits at a time. She used a shoe to hit me mostly on my back which left bruises and hurt for a couple of days. The first time was because I told her Jesse, 1-2 years younger than us, was hitting us.   MARCELA hit me with a clothes hanger mostly on my back and both arms. MARCELA said that if we told anyone she would get mad and hit us again;

• MARCELA usually used a belt or an open hand to hit me usually every day, which would leave marks on my body and/or bruises and scratches on my back and on my arms and legs that would last a couple of days;

• MARCELA usually used a black belt with little circles, brown in the middle, about an inch wide, with a goldish buckle, but used up to about 4 different belts. Another belt was grey with a black buckle, skinnier than the black and brown one.  The belts would leave red marks and bruises on my back and arms that would hurt and last a couple of days.

• MARCELA also used mostly a black or a white fat round plastic clothes hanger to hit me with;

• MARCELA did not usually hit us all together at the same time. I saw MARCELA hit my brothers and sister. Sometimes she called us to be hit, or she would just hit us;

• FERNANDO did not hit us as often because he was not always home. He usually hit us about 2 times a week on the weekends; FERNANDO usually hit us all at the same time and mostly used a belt, usually on our backs with our clothes on. He would use different belts from the belts

used by MARCELA, smaller and usually black belts.

• MARCELA and FERNANDO would also punish us about twice a week if we complained about anything or if we complained about how Jesse was treating us, by locking us in our rooms or in the garage, without water or food, for around 30 minutes, and they would turn out the lights in the bedroom or garage if at night.

• MARCELA would also call us names in Spanish like "estupida or pendeja", and tell us stuff like we did not matter, and that our mother did not want us and that was why we were here;

• Every once in a while MARCELA & FERNANDO would put NILTON & BRIAN's food outside on the cement outside of the kitchen glass door or put their food outside for them to eat.

• Jesse tried to touch me once on my private parts. He's about 1-2 years younger than me. I was about 9 years old. We were in the living room at about 6 pm. My brothers and sister were upstairs with MARCELA. I told him to stop but he would not stop at first. Then I went to tell MARCELA and she did not believe me. She did not call Jesse to ask him. She told me I was a liar trying to get Jesse in trouble.

• Another time MARCELA was giving BELLA a shower downstairs and left her alone in the shower to go upstairs to get BELLA some clothes. BELLA was about 2-3 years old. I walked into the bathroom and saw BELLA alone with Jesse trying to touch her front private part. He had his hand on her thigh moving it up and I told him to stop. He stopped and did not say anything and left the bathroom. I went to tell MARCELA. MARCELA told me to stop saying things like that and she went downstairs. This happened about 1 month after Jesse tried to touch me in my private parts.

• Jesse is about 2-3 years older than BRIAN & NILTON and would hit them and call them names.

• I was afraid to tell anyone about what MARCELA and FERNANDO and Jesse were doing because MARCELA would just punish us more. After we came home I began having bad dreams about once a week of MARCELA hitting us in the garage or in our rooms. I still have those dreams but not as much as before.

58. On 8/11/2020 the Court granted the minors NILTON, BRIAN & BELLA their Petition for

Order Relieving them from Claims filing Provisions of Government Code § 945.6, but the Court denied MITZY's Petition for such relief.

59. Plaintiffs have complied with all claims reporting requirements.

## FIRST CAUSE OF ACTION

### [General Negligence]

### (BY ALL PLAINTIFFS AS AGAINST NINOS LATINOS UNIDOS FAMILY FOSTER AGENCY, MARCELA BAEZA & FERNANDO BAEZA & DOES 1-25)

60. Plaintiffs reallege each and every allegation set forth in Paragraphs 1- 59 of this Complaint as though fully set forth herein.

61. At all times herein alleged between approximately 1/20/2017 through 2/2/2019, defendant L.A. CO. through its DCFS, was duly ordered by the juvenile court to provide Plaintiffs their child welfare services as described in Welfare & Institutions Code §16501.

62. Plaintiffs are informed, believe and allege that at all times herein it has been the intent of the State of California's Legislature that there be private efforts to recruit foster parents and that the total number of foster parents be increased as set forth in Health & Safety Code §§ 1500, et. seq..

63. Plaintiffs are informed, believe and allege that at all times herein mentioned, defendant NINOS FFA and DOE defendants 1 through 25, inclusive, each was and is a "Foster Family Agency", as described in Health & Safety Code § 1506, duly authorized by defendant L.A.CO.'s DCFS and the State of California, but not by way of limitation:

- To make private efforts to recruit foster parents so as to assist in increasing the total number of foster parents;
- To "*certify*", but not to "license" private homes in the community to provide foster care;
- To document that each of NINOS FFA's foster parents has met all of the state's requirements to become a certified foster parent as prescribed in Title 22 of the California Administrative Code §§ 80000, et. seq.;
- To properly train and supervise the foster parents that it certifies and to determine

whether or not the home continues to meet licensing standards;

- To provide foster home placements and treatment services in the community for children who have been judicially determined to be legal dependents of the Superior Court of defendant L.A. CO.; and,

- To provide professional support to its certified foster parents, pursuant to the provisions of Welfare Institutions Code §300, et. seq., Health and Safety Code §1501, 1501.1, 1502, 1506 & 1506.6, Government Code §811.2, and Title 22 of the California Administrative Code Sections, §80000 et. seq.

64. Plaintiffs are informed, believe and allege that at all times herein mentioned between approximately 1/20/2017 through 2/2/2019, defendant L.A CO.'s DCFS employed defendant NINOS FFA and DOES 1-25 to provide to Plaintiffs as juvenile court dependents, without limitation, Plaintiffs' certified foster home placement and treatment services in the community, case management services and activities which are mandated by the Division 31 regulations to be performed by defendant L.A. CO.'s DCFS' Children Services Workers, "CSWs", who were assigned responsibility for Plaintiffs as Juvenile Court dependents, and that by reason of its independent contract with defendant L.A.CO., co-defendant NINOS FFA has assumed an independent and co-existing mandatory duty of care with defendant L.A. CO. to care for and protect Plaintiffs.

65. Plaintiffs are informed, believe and allege that at all times herein alleged individual defendants MARCELA BAEZA & FERNANDO BAEZA had been recruited by defendant NINOS FFA to become certified foster parents so as to assist in increasing the total number of NINOS FFA's foster parents and to be "certified" by NINOS FFA as a private home in the community to provide foster care as described in Health & Safety Code § 1506 and the associated regulations.

66. Plaintiffs are informed, believe and allege that at all times herein alleged from some unknown time prior to 4/29/2015 defendant L.A. CO. had duly authorized defendant NINOS FFA, and defendant NINOS FFA thereafter issued to the BAEZA defendants, its Certificate of Approval and *certified* to the State of California's Department of Social Services, ("DSS"), with no specific limitations stated, that the home of MARCELA BAEZA and FERNANDO BAEZA, located in

Lancaster, CA., met the minimum licensing standards pursuant to Health & Safety Code § 1506(b) and Title 22 California Administrative Code, Division 6.

67. Plaintiffs are informed, believe and allege that at on or about 4/29/2015 defendant L.A. CO.'s DCFS, pursuant to its independent contract with defendant NINOS FFA as alleged herein, placed Plaintiffs into the BAEZA defendants' home certified by NINOS FFA, and that Plaintiffs thereafter continuously resided in the BAEZA certified foster home until approximately 3/3/2018.

68. At all times herein beginning approximately 2/24/2015 through approximately 3/3/2018 DCFS assigned various of its Children Services Workers, ("CSWs") to oversee Plaintiffs' various placement and welfare services as dependents of the Juvenile Court.

69. At all times herein alleged Health & Safety Code § 1506(b)1 provides in relevant part that defendants L.A. CO. and NINOS FFA, as foster family agencies, may require its foster parents to meet additional standards or be compatible with said defendants' treatment approach.

70. Plaintiffs are informed, believe and allege that at no time beginning approximately at no time prior to 4/29/2015 through approximately 3/3/2018 did defendant L.A. CO. investigate, assess and/or inquire of defendant NINOS FFA and/or of the individual BAEZA defendants, nor did defendant NINOS FFA investigate, assess and/or inquire whether the BAEZA defendants, or either of them, should be required to attend further training to properly care for Plaintiffs, nor did defendants L.A. CO. and/or NINOS FFA require the BAEZA defendants to do anything to demonstrate their ability to properly care for and provide safe and appropriate foster treatment services to Plaintiffs.

71. Plaintiffs are informed, believe and allege that at no time beginning approximately at no time prior to 4/29/2015 through approximately 3/3/2018 did defendants L.A. CO. or NINOS FFA investigate, assess, inquire and/or require the BAEZA defendants to meet additional standards or to demonstrate their particular foster care skills provided to Plaintiffs to be compatible with defendants L.A. CO.'s and NINOS FFA's treatment approach as set forth in Health & Safety Code § 1506(b)1.

72. At all times herein alleged Health & Safety Code §§1529.1 & 1529.3 mandate the minimum amount of foster parent training required of certified foster parents such as the BAEZA defendants,

and that defendant L.A. CO. shall not be precluded from requiring pre-placement or post-placement foster parent training in excess of the requirements of those sections.

73. Plaintiffs are informed, believe and allege that at no time prior to 4/29/2015 through approximately 3/3/2018 did defendant NINOS FFA and Does 1-25:

• Investigate, assess and/or inquire whether BAEZA defendants required any further training to properly care for Plaintiffs, or

• Require the BAEZA defendants to attend or complete pre-placement or post-placement foster parent training in excess of minimal foster care training requirements as set forth in Health & Safety Code §§ 1529.1 & 1529.2, in order for the BAEZA defendants to demonstrate to defendants L.A. CO. and/or NINOS FFA the BAEZA defendants' particular foster care skills provided to Plaintiffs to be compatible with defendant L.A. CO.'s and/or defendant NINOS FFA's treatment approach as set forth in Health & Safety Code § 1506(b).

74. Plaintiffs are informed, believe and allege that defendants' L.A. CO. and NINOS FFA and Does 1-25, and each of them, at all times herein are required by law to keep and maintain ledger notes and/or entries of all contacts with third parties, known variously as "Delivered Service Logs, Title 20s, and /or 1950s", of all information obtained, all allegations raised, all incidents occurring and/or any other relevant information regarding the child welfare services delivered to each Plaintiff as dependent children, relating to each said defendants' respective supervision of its certified foster parents, its monitoring of the standard of care and treatment services provided to foster children placed into its certified foster homes, including Plaintiffs' physical, psychological, emotional, behavioral, and/or any other relevant activities.

75. Plaintiffs are informed, believe and allege that defendants' L.A. CO. and NINOS FFA and Does 1-25, requirement to keep and maintain ledger notes and/or entries of all contacts with third parties, known variously as "Delivered Service Logs, Title 20s, and /or 1950s", are for the purpose of providing, inter alia, for each Plaintiffs' needs and best interests from time to time occurring, and protecting Plaintiffs against known and foreseeable risks of harm posed to them, including but not limited to:

• The BAEZA defendants' prior history of DCFS Hotline referrals;

• NINOS FFA's prior history of DCFS Hotline referrals;

• Wendy Trujillo's 3/9/2018 report to Deputy Telles of the Lancaster Sheriffs office, reported as **DR#: 018-04664-1131-149**, re suspected violation of Penal Code §273 AR;

• Wendy Trujillo's 3/13/2018 report to Deputy Moore of the Lancaster Sheriffs office, reported as **DR#: 018-04947-1137-120**, re suspected violation of Penal Code §289;

• Wendy Trujillo's 4/12/2018 report to Deputy Bueso of the Lancaster Sheriffs office, reported as **DR#: 018-07008-1126-120**, re suspected sexual crime against child;

• The BAEZA defendants' becoming overwhelmed in providing care for her own minor children, in addition to Plaintiffs and any other foster children in the BAEZA defendants' certified foster home; and,

• The circumstances related to the Plaintiffs' removal from the BAEZA defendants home on 3/8/2018, including but not limited to allegations of Plaintiffs' sexual abuse, physical abuse or emotional abuse by the BAEZA defendants.

76. Plaintiffs are informed, believe and allege that at no time beginning approximately 4/29/2015 through approximately 3/3/2018 did defendant NINOS FFA nor any of its CSWs assigned to Plaintiffs' case report to any of defendant L.A. CO.'s DCFS CSW, SCSW, to Community Care Licensing, nor to anyone else any of the knowable and foreseeable risk of abuse to Plaintiffs including but not limited to allegations of Plaintiffs' sexual abuse, physical abuse or emotional abuse by the BAEZA defendants.

77. Plaintiffs are informed, believe and allege that at no time beginning approximately 4/29/2015 through approximately 3/3/2018  did defendant NINOS FFA nor any of its CSWs assigned to Plaintiffs' case report any of the facts alleged in  ¶¶ 1-55 supra, to defendant L.A. CO.'s CHILD ABUSE HOTLINE.

78. Plaintiffs are informed, believe and allege that at no time beginning approximately 4/29/2015 through approximately 3/3/2018 do NINOS FFA's nor do DCFS' CSW's Delivered Service Logs for Plaintiffs include any entries of the facts alleged in ¶¶ 1-55, supra, as required by law.

79. Plaintiffs are informed, believe and allege that beginning approximately 4/29/2015 through

approximately 3/3/2018 defendants LACO and NINOS FFA, and each of them, and DOES 1-25 each knew and/or should have known, in the exercise of reasonable diligence, that the BAEZA defendants were incompetent, unqualified, and unfit to do the acts required of them as certified foster parents for Plaintiffs, and that by placing Plaintiffs into the BAEZA defendants' certified foster home without knowledge of and/or inadequate documentation of the BAEZA defendants' prior history of DCFS Hotline referrals and the allegations made therein, could reasonably and foreseeably expose Plaintiffs to the unreasonable risks against which they could not defend, including but not limited to:

• The BAEZA defendants' prior history of DCFS Hotline referrals;

• NINOS FFA's prior history of DCFS Hotline referrals;

• Wendy Trujillo's 3/9/2018 report to Deputy Telles of the Lancaster Sheriffs office, reported as **DR#: 018-04664-1131-149**, re suspected violation of Penal Code §273;

• Wendy Trujillo's 3/13/2018 report to Deputy Moore of the Lancaster Sheriffs office, reported as **DR#: 018-04947-1137-120**, re suspected violation of Penal Code §289;

• Wendy Trujillo's 4/12/2018 report to Deputy Bueso of the Lancaster Sheriffs office, reported as **DR#: 018-07008-1126-120**, re suspected sexual crime against child;

• The BAEZA defendants' becoming overwhelmed in providing care for her own minor children, in addition to Plaintiffs and any other foster children in the BAEZA defendants' certified foster home; and

• The circumstances related to the Plaintiffs' removal from the BAEZA defendants home on 3/8/2018 including but not limited to allegations of Plaintiffs' sexual abuse, physical abuse or emotional abuse by the BAEZA defendants.

80. Plaintiffs are informed, believe and allege that beginning approximately 4/29/2015 through approximately 3/3/2018 defendants LACO and NINOS FFA, and DOES 1-25 and each of them, knew and/or should have reasonably foreseen and known, but not by way of limitation, that it was not safe to place Plaintiffs into and/or to allow Plaintiffs to remain placed in the BAEZA defendants' certified foster home without requiring them to attend or to complete pre-placement and/or post-placement foster parent training in excess of minimal foster care training requirements

as set forth in Health & Safety Code §§ 1529.1 & 1529.2, in order to demonstrate their particular foster care skills to be provided to Plaintiffs to be compatible with defendant L.A. CO.'s and/or defendant NINOS FFA's treatment approach as set forth in Health & Safety Code § 1506(b), and that such negligent and careless foster placement created and exposed Plaintiffs to unreasonable and foreseeable risks of harm to their respective physical safety and emotional well-being against which they could not defend.

81. Plaintiffs are informed, believe and allege that defendants NINOS FFA's and DOES 1-25, and each of them, negligently and carelessly failed to investigate, assess, inquire and/or require the BAEZA defendants' certified foster home to meet additional standards, demonstrate additional competency and/or provide additional training and supervision to said defendants in order to properly care for Plaintiffs as set forth in Health & Safety Code § 1506 (b)(1) and that such failure proximately contributed to Plaintiffs' injuries and damages suffered as alleged herein.

82. Despite defendants NINOS FFA's and DOES 1-25, and each of their, knowledge that the BAEZA defendants were unfit and unqualified to be certified as foster parents, and despite defendants NINOS FFA's and DOES 1-25, and each of their, failure to investigate, assess, inquire and/or require the BAEZA defendants to meet additional standards, demonstrate additional competency, and/or provide additional training and supervision to the BAEZA defendants in order to properly care for Plaintiffs as set forth in Health & Safety Code § 1506 (b)(1), these defendants nevertheless negligently certified, placed and accepted Plaintiffs' placement into the BAEZA defendants' certified foster home, thereby creating and exposing Plaintiffs to additional and unnecessary risks of harm against which plaintiffs could not defend.

83. Plaintiffs are informed, believe and allege that at no time beginning approximately 4/29/2015 through approximately 3/3/2018 did defendant NINOS FFA's CSWs, but not by way of limitation:

- Visit Plaintiffs in the certified home of defendant BAEZA on at least a monthly basis;
- Visit more frequently and on an unannounced basis as necessary;
- Inquire of Plaintiffs physical and/or emotional health in order to protect and to

promote Plaintiffs' physical and emotional safety and well-being; and

- • Said defendants therefore negligently and carelessly failed to observe and or assess the risks of harm posed to Plaintiffs by the BAEZA defendants.

84.  Plaintiffs are informed, believe and allege that beginning approximately 4/29/2015 through approximately 3/3/2018 , defendants NINOS FFA and Does 1 through 25, inclusive, and each of them, so negligently and carelessly:

• Certified, failed to properly train and supervise the BAEZA defendants as foster parents;

• Failed to properly determine whether or not the BAEZA defendants certified foster home met and/or continued to meet licensing standards;

• Failed to provide Plaintiffs their respective proper foster home placement, care, supervision and treatment services as dependents of the juvenile court;

• Failed to provide professional support to the BAEZA defendants, failed to require the BAEZA defendants to demonstrate to defendants L.A. CO. and/or NINOS FFA, or to either of them, the BAEZA defendants' ability to properly care for and supervise Plaintiffs, as set forth in Health & Safety Code § 1506(b)(1);

• Failed to investigate, assess and/or inquire as to the level of care being provided by the BAEZA defendants;

• Failed to properly investigate, assess, inquire, develop and/or provide for the Plaintiffs' child welfare service needs;

• Failed to utilize pre-placement preventive services so as to promote and /or protect Plaintiffs' health and safety, failed to provide appropriate case management services, attempted to contract away with NINOS FFA for the provision of Plaintiffs' mandated non-delegable case management duties, failed to monitor the standard of care and treatment services provided to Plaintiffs by the BAEZA defendants;

• Failed to conduct monthly and unannounced personal visits with Plaintiffs outside of the BAEZA defendants' presence, failed to inquire of Plaintiffs physical and emotional condition;

• Failed to place Plaintiffs consistent with their best interests;

• Failed to supervise and to monitor Plaintiffs' physical and emotional condition and to take

necessary action to safeguard Plaintiffs' growth and development while in placement; and,

• Failed to discharge their respective duties of care owing to Plaintiffs, as generally described herein so as to proximately create and expose Plaintiffs to unreasonable and foreseeable risks of harm to Plaintiffs' respective physical safety and emotional well-being, so as to proximately cause Plaintiffs to suffer the damages alleged herein.

85. Plaintiffs are informed, believe and allege that all times alleged herein, defendants NINOS FFA, the BAEZA defendants, and Does 1-25, inclusive, and each of them, so negligently and carelessly trained, certified, supervised, cared for, controlled, treated, placed, assessed, and/or failed to discharge their duties of care owing to Plaintiffs, as generally described herein, so as to proximately cause Plaintiffs to suffer the damages alleged herein.

86. As a direct and proximate result of the negligence of defendants NINOS FFA, the BAEZA defendants, and Does 1-25, inclusive, and each of them, Plaintiffs, and each of them, were hurt and injured in their respective strength and activity, sustaining injury to each of their nervous systems and persons, all of which injuries have caused, and continue to cause Plaintiffs great mental, physical and nervous pain and suffering. Plaintiffs are informed, believe and allege that these injuries will result in some permanent disability to each of them. As a result of such injuries, Plaintiffs have suffered general damages in an amount according to proof.

87. As a further proximate result of the negligence of each defendant, Plaintiffs have each incurred and will continue to incur medical, psychological and related expenses in amounts according to proof, and each will incur a loss of earning capacity in an amount according to proof.

### SECOND CAUSE OF ACTION:

### [Public Employee Liability- Govt. Code §820]

### (BY PLAINTIFFS NILTON, BRIAN & BELLANIRA AGAINST DEFENDANTS LACO, INDIVIDUAL DEFENDANTS MAGALLANES, RAMOS & CARDENAS, & DOES 1-25)

88. Plaintiffs re-allege the allegations in Paragraphs 1-87 above.

89. Plaintiffs are informed, believe and allege that at all times alleged beginning approximately 2017 through 3/3/2018 DCFS' CSW MAGALLANES, CSW RAMOS and SCSW CARDENAS,

were court social workers, child protection workers and public employees authorized to initiate or conduct investigations or proceedings of suspected child abuse pursuant to Chapter 2, commencing with Section 200 of the Welfare & Institutions Code.

90. Government Code §820a provides that a public employee is liable for injury proximately caused by his /her own negligent or wrongful act or omission to the same extent as a private person. At all times alleged MAGALLANES, RAMOS & CARDENAS, and Does 1-25 were acting within the course and scope of their public employment as DCFS social workers and as mandated reporters.

91. Plaintiffs NILTON, BRIAN & BELLANIRA are informed, believe and allege that at all times alleged beginning approximately 2017 through 3/3/2018, DCFS' CSW MAGALLANES, CSW RAMOS and SCSW CARDENAS negligently, carelessly, recklessly and wrongly fail to include full and complete entries of the facts alleged in ¶¶ 1-87, supra, as required by law.

92. All defendants herein are mandated reporters under Penal Code §11165.7.

93. These Plaintiffs are informed, believe and allege, despite LACO,DCFS' CSW MAGALLANES, CSW RAMOS and SCSW CARDENAS and Does 1-25, and each of their respective access to Plaintiffs' prior juvenile court history of the facts alleged in above, of the knowable and foreseeable risks of harm posed to these Plaintiffs while in the BAEZA's care, LACO, DCFS' CSW MAGALLANES, CSW RAMOS and SCSW CARDENAS, each:

• so negligently, carelessly, recklessly, willfully, and maliciously conducted and/or failed to investigate the facts alleged in the various reports and referrals against the BAEZAs;

• so negligently, carelessly, recklessly, willfully, wantonly and maliciously supervised, analyzed, assessed and/ or failed to analyze and assess Plaintiffs' prior juvenile court history;

• so negligently, carelessly, recklessly, willfully, wantonly and maliciously failed to obtain Plaintiffs' statements from the BAEZAs' victims, independently and away from the BAEZAs;

• so negligently, carelessly, recklessly, willfully, wantonly and maliciously ignored the reporting parties', victims' and Plaintiffs' own statements of their abuse by the BAEZAs;

• so negligently, carelessly, recklessly, willfully, and maliciously failed to inquire

independently of Plaintiffs, and each of them, their physical and emotional condition;

• so negligently, carelessly, recklessly, willfully, wantonly and maliciously conducted and/or failed to investigate, analyze, assess and monitor Plaintiffs' physical and emotional condition or to take necessary action to safeguard Plaintiffs' growth and development;

• so negligently, carelessly, recklessly, willfully, wantonly and maliciously discharged their respective duties of care owing to Plaintiffs, as generally described ;

• so as to negligently, carelessly, recklessly, willfully, wantonly and maliciously conclude that the myriad referrals were "Unfounded"; i.e., determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve accidental injury, or not to constitute child abuse or neglect as defined in Penal Code §11165.6"; and,

• so as to proximately create and expose Plaintiffs to unreasonable, foreseeable and continuing risks of harm to their respective physical safety and emotional well-being against which they could not defend; so as to cause these Plaintiffs' continuing exposure to the BAEZA's physical, emotional and sexual abuse of them beginning approximately 2017 through 3/3/2018; and so as to proximately cause these Plaintiffs to suffer the damages alleged.

94. As a legal result of the breaches by LACO and Does 1-25, inclusive, and each of them, these Plaintiffs were each hurt and injured in their respective strength and activity, sustaining injury to each of their nervous systems and persons, all of which injuries have caused, and continue to cause them great mental, physical and nervous pain and suffering. Plaintiffs are informed, believe and allege that these injuries will result in some permanent disability to each of them. As a result of such injuries, these Plaintiffs have suffered general damages amounts according to proof.

95. As a further proximate result of the negligence of each of said defendants, Plaintiffs have incurred and will continue to incur medical, psychological and related expenses in amounts according to proof.

## THIRD CAUSE OF ACTION

### [Violation of Mandatory Statutory Duties - Government Code § 815.6 ]
### (BY PLAINTIFFS NILTON, BRIAN & BELLA AS AGAINST
### DEFENDANTS LACO & DOES 1-25)

96. Plaintiffs NILTON, BRIAN & BELLANIRA reallege each and every allegation set forth in Paragraphs 1-95 of their Complaint as though fully set forth herein and incorporates same by reference.

97. These Plaintiffs are informed, believe and allege that Welfare & Institutions Code §§300 et. seq., 16000, 16010, 16500 et. seq. & 16501.1, and Title 22 of the California Code of Regulations, §§ 80000, et seq., 83000, et seq. & 87068.2 set forth the generally described legislative intent:

    • To provide for the care and supervision of children placed into certified foster homes;

    • To focus on the preservation of the family as well as to provide maximum protection for physically, sexually, emotionally abused and/or neglected minors who had been judicially determined to be dependents of the Superior Court of the State of California and a mandate to establish and maintain a case plan individually describing and detailing the necessary treatment for known medical, social, educational and/or other developmental and behavioral needs of a dependent minors such as Plaintiffs;

    • Require that Plaintiffs be placed consistent with their individual best interests, and that defendants, and each of them, were to supervise and to monitor Plaintiffs' physical and emotional conditions; and

    • To take necessary action to safeguard Plaintiffs' growth and development while in foster placement, among other things, in order to provide for Plaintiffs' safety and protection while in foster care.

98. These Plaintiffs are informed, believe and allege that each of the "laws" as defined in Government Code §811, "regulation" as defined in Government Code § 811.6 and/or "enactment" as defined in Government Code § 810.6, described herein, was designed to create specific mandatory duties of care owing by the defendant L.A. CO.'s DCFS to focus on the preservation of the family as well as to protect Plaintiffs as dependents of the Los Angeles County Superior Court, against the risks of the particular known and/or foreseeable risks of "injuries" as defined in Government Code §810.8 and as complained of herein.

99. At all times herein alleged Government Code § 815.4 provides that a public entity is liable

for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to liability if it were a private person.

100. At all times herein alleged Government Code § 815.6 provides that where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

101. At all times herein alleged the State of California's Department of Social Services Manual of Policies and Procedures, Chapter 31-301.2 and Welfare & Institutions Code § 16501 require that defendant L.A. CO. shall provide child welfare services to juvenile dependents, such as Plaintiffs, as needed, pursuant to an approved service plan in order restore to their families children who have been removed, to protect and to promote Plaintiffs' welfare and to assure Plaintiffs' safe and adequate care away from their home.

102. At all times herein alleged the State of California's Department of Social Services Manual of Policies and Procedures, Chapter 31-301.21 provides that "Counties shall not contract for case management services and any activities which are mandated by the Division 31 regulations to be performed by the social worker".

103. At all times mentioned herein, defendant L.A. CO. and DOE defendants 1-25, and each of them, *owed the following mandatory duties* of care to Plaintiffs pursuant to the following *statutes*, among others:

      a. Pursuant to Government Code § 815.6, said defendants owed mandatory duties imposed by the enactments and regulations described below which were designed to protect Plaintiffs against the risks of the particular injuries complained of herein and said defendants are therefore liable to Plaintiffs for such injuries proximately suffered;

      b. Pursuant to Health & Safety Code §§ 1536.1(b) & 1536.2 defendants were mandated to place Plaintiffs in an appropriate certified foster family home which best met their respective health, safety and age-appropriate well-being needs;

c. Pursuant to Welfare & Institutions Code § 361.2(e)(6), Plaintiffs had been ordered by the juvenile court to be under defendant L.A. CO.'s exclusive care, custody and control to be placed in a suitable certified family home;

d. Pursuant to Welfare & Institutions Code § 361.5, Plaintiffs had been ordered by the juvenile court to be under defendant L.A. CO.'s exclusive care, custody and control; and the social worker ordered to provide child welfare family reunification services to Plaintiffs;

e. Pursuant to Welfare & Institutions Code § 16501(c) & (h) defendant L.A. CO. was mandated to provide Plaintiffs case management, family reunification services to reunite the family, and child welfare services as specified in the various DSS Regulations set forth below, and as necessary to protect and promote Plaintiffs' welfare and prevent Plaintiffs' neglect, abuse and/or exploitation while under court supervision;

f. Pursuant to Welfare & Institutions Code § 16501.1(c), (d) & (f) defendant L.A. CO. was mandated to develop case plans for Plaintiffs to ensure their receipt of protection and safe and proper case management to address their particular family reunification services to reunite the family, child welfare services as specified in the various DSS Regulations in foster care; was mandated to make pre-placement assessments of prospective foster placements for Plaintiffs; was mandated to base the selection of Plaintiffs' placement on selection of a safe setting; and was mandated to have contact with Plaintiffs, their caretakers and their parents in accordance with DSS regulations;

g. Pursuant to Welfare & Institutions Code § 16501.1(2) defendant L.A. CO. was mandated to provide to Plaintiffs a case plan for safe and proper care and case management while services are provided to reunite the family;

h. Pursuant to Welfare & Institutions Code § 16502, defendant L.A. CO. is mandated to provide to Plaintiffs child welfare services in accordance with DSS regulations; and

i. Pursuant to Welfare & Institutions Code § 16518, defendant L.A. CO. was mandated to follow the DSS criteria for conducting home studies of the BAEZA defendants as prospective foster parents and mandated the evaluation the BAEZA

defendants' ability, readiness and willingness to meet the Plaintiffs' varying foster care needs.

104. At all times mentioned herein, defendant L.A. CO. and DOE defendants 1-25, and each of them, *owed the following mandatory duties of care* to Plaintiffs pursuant to the following State Department of Social Services Division 31 Regulations:

a. Regulation 31-001 mandates the requirements specified in Regulations 31-005 through 31-525 shall be complied with by defendant L.A. CO;

b. Regulation 31-005.12 mandates the active recruitment of competent placement providers that will aid the attainment of case plan goals;

c. Regulation 31-125 mandates the CSW to determine the potential for or existence of any conditions which placed Plaintiffs at risk;

d. Regulation 31-206 mandates the CSW's case plan documentation including an assessment of the Plaintiffs' placement and special needs and a determination and description of the type of home best suited to meet them;

e. Regulation 31-220 mandates case plan updates as frequently as service and permanency needs of Plaintiffs dictate;

f. Regulation 31-225 mandates case plan update documentation including case plan adequacy and appropriateness and the need for change in the case plan, if any, and cross-references Welfare & Institutions Code §§ 361, 361.5 & 16501.1(d);

g. Regulation 31-230 mandates the CSW's case plan updates as often as service needs of Plaintiffs dictate and as necessary in order to assure achievement of service objectives and cross-references Welfare & Institutions Code § 16501.1(d)(f);

h. Regulation 31-301 mandates the CSW shall ensure that provision of all services is consistent with the case plan goals in Plaintiffs' case plans and that defendant L.A. CO. shall not contract for case management services and any activities mandated by DSS regulations to be performed by the CSW;

i. Regulation 31-310 mandates that the CSW shall monitor the Plaintiffs' physical and emotional condition;

j.  Regulation 31-320 mandates the CSW's contacts with Plaintiffs to verify and to monitor their safety and assess their well-being as often as needed, and cross references Welfare & Institutions Code § 16501.1(d)(f);

k.  Regulation 31-330 mandates the CSW's contacts with Plaintiffs' foster parents to monitor and assess the quality of care provided to Plaintiffs, including Plaintiffs' location and safety and the foster parents' ability to meet the Plaintiffs' needs;

l.  Regulation 31-335 mandates the CSW's contacts with other professionals such as NINOS FFA's CSWs, in order to monitor and assess the quality of care provided to Plaintiffs, including the location and safety of Plaintiffs;

m.  Regulation 31-405 mandates the CSW's duty to monitor the Plaintiffs' physical and emotional conditions and to take necessary actions to safeguard Plaintiffs' growth and development while in foster placement; and,

n.  Regulation 31-420 mandates that Plaintiffs' foster care placement be based on Plaintiffs' age, including the capability of the BAEZAs to provide proper care and supervision.

105. These Plaintiffs are informed, believe and allege that at all times herein alleged defendant L.A. CO. and DOES 1-25, inclusive, and each of them, *violated the mandatory statutory duties* imposed upon them by Health & Safety Code §§ 1536.1(b) & 1536.2, Welfare & Institutions Code §§ 281, 309, 311, 319, 358, 361.2, 366.21, 366.22, 16501(c), 16501.1, 16501.1(c) & (f), 16502, & 16518 by the following:

a.  Negligently failing to place Plaintiffs in an appropriate certified foster family home which best met their special needs as mandated by Health & Safety Code §§ 1536.1(b) & 1536.2;

b.  Negligently failing to investigate, discover and report to the Court as mandated by Welfare & Institutions Code § 281 the true and accurate facts and circumstances of Plaintiffs' custody, status and welfare and the dangerous conditions which existed in the BAEZA defendants' certified foster home;

c.  Negligently contracting away its case management duties to defendant NINOS FFA,

negligently failing to provide Plaintiffs' case management and child welfare services as specified in the various DSS Regulations set forth below, negligently failing to independently assess and evaluate the truth and accuracy of the periodic reports submitted to it by its independent contractor NINOS FFA, negligently relying on the truth and accuracy of NINOS FFA's reports, negligently failing to learn and to assess the risks posed to Plaintiffs by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein as mandated by Welfare & Institutions Code § 16501(c);

d.  Negligently failing to develop an appropriate and updated case plan for Plaintiffs to ensure their protection and safe and proper case management to address their needs in foster care; negligently failing make pre-placement assessments and to provide services to Plaintiffs; negligently failing to base the selection of Plaintiffs' placement into the BAEZA defendants' certified foster home on selection of a safe setting; and negligently failing to have contact with Plaintiffs in accordance with DSS regulations and as mandated by Welfare & Institutions Code § 16501.1(c), (d) & (f);

e.  Negligently failing to provide to Plaintiffs their child welfare services in accordance with DSS regulations as mandated in Welfare & Institutions Code § 16502;

f.  Negligently failing to follow the DSS criteria for conducting home studies of the BAEZA defendants prospective foster parents for Plaintiffs and the evaluation of their ability, readiness and willingness to meet the Plaintiffs' needs as mandated in Welfare & Institutions Code § 16518.

106. Plaintiffs are informed and believe and thereon allege that at all times herein alleged defendant L.A. CO. and Does 1-25 inclusive, and each of them, *violated the mandatory statutory duties* imposed upon them by State Department of Social Services Division 31 Regulations, among others, as follows:

a.  DCFS' CSW's negligently failing in the recruitment of a competent placement

provider for Plaintiffs that aided the attainment of case plan goals as mandated by Regulation 31-005.12;

b. DCFS' CSW's negligently failing to determine the potential for or existence of any conditions which placed Plaintiffs at risk as mandated in Regulation 31-125 so as to fail to observe, learn and/or report the risks posed to Plaintiffs by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein;

c. DCFS' CSW's negligent failing in case plan documentation and assessment of the Plaintiffs placement needs and a determination and description of the type of home best suited to meet them as mandated in Regulation 31-206 so as to fail to observe, learn and/or report the risks posed to Plaintiffs by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein;

d. DCFS' CSW's negligent failing to update Plaintiffs' case plan as frequently as service and permanency needs of Plaintiffs dictated as mandated in Regulation 31-220 so as to fail to observe, learn and/or report the risks posed to Plaintiffs by the BAEZA defendants being overwhelmed by the number of young children in their care,, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

e. DCFS's CSW's negligent failing to update case plan documentation to include an assessment of case plan adequacy and appropriateness and the need for change in the case plan, if any, as mandated in Regulation 31-225 and cross-referenced in Welfare & Institutions Code §§ 361, 361.5 & 16501.1(d) so as to fail to observe, learn and/or report the risks posed to Plaintiffs by the BAEZA defendants being overwhelmed by the number of young children in their care,, negligently failing to protect and promote

Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

f.  DCFS' CSW's negligent failing to update Plaintiffs' case plans as often as service needs of Plaintiffs dictated and as necessary in order to assure achievement of service objectives as mandated in Regulation 31-230 mandates and cross-references Welfare & Institutions Code § 16501.1(d)(f) so as to fail to observe, learn and/or report the risks posed to Plaintiffs by the BAEZA defendants being overwhelmed by the number of young children in their care,, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

g.  DCFS' CSW's negligent failing to ensure that provision of all services to Plaintiffs was consistent with the case plan goals in Plaintiffs' case plans and defendant L.A. CO.'s contracting for Plaintiffs' case management services and activities mandated by DSS regulations to be performed by the CSW in violation of Regulation 31-301 mandates so as to fail to observe, learn and/or report the risks by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

h.  DCFS' CSW's negligent failure to personally meet with Plaintiff to verify and to monitor their safety and assess their well-being as often as needed, as mandated in Regulation 31-320 mandates and cross references Welfare & Institutions Code   § 16501.1(d)(f) so as to fail to observe, learn and/or report the by the BAEZA defendants being overwhelmed by the number of young children in their care,, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

i.  DCFS' CSW's negligent failure to maintain personal and direct contacts with the BAEZA defendants, Plaintiffs' certified foster parents, to monitor and assess the quality of care provided by them to Plaintiffs, including Plaintiffs' location and safety and the

BAEZA defendants' ability to meet the Plaintiffs' needs as mandated in Regulation 31-330 so as to fail to observe, learn and/or report the by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

j.   DCFS' CSW's negligent failure to maintain personal and direct contacts with other professionals such as defendant NINOS FFA's CSWs to monitor and assess the quality of care provided to Plaintiffs, including Plaintiffs' location and safety as mandated in Regulation 31-335 so as to fail to observe, learn and/or report the by the BAEZA defendants being overwhelmed by the number of young children in their care,, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court;

k.   The CSW's negligent failure to maintain personally and directly monitor the Plaintiffs' physical and emotional conditions and to take necessary actions to safeguard their growth and development while in foster placement as mandated in Regulation 31-405 so as to fail to observe, learn and/or report the by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court; and

l.   DCFS' CSW's negligent failure to assess and ascertain for themselves that Plaintiffs' foster care placement in the BAEZA defendants' certified foster home was based on Plaintiffs' needs including the ability of the BAEZA defendants to meet Plaintiffs' specific needs as mandated in Regulation 31-420 so as to fail to observe, learn and/or report the by the BAEZA defendants being overwhelmed by the number of young children in their care, negligently failing to protect and promote Plaintiffs welfare and preventing Plaintiffs' injuries, and the neglect and abuse by the BAEZA defendants complained of herein to the court.

107. These Plaintiffs are informed, believe and allege that each of the "laws" as defined in Government Code §811, "regulation" as defined in Government Code §811.6 and/or "enactment" as defined in Government Code §810.6, described herein, was designed to protect Plaintiffs against the risks of the particular known and/or foreseeable risks of "injuries" as defined in Government Code §810.8 as complained of herein. Plaintiffs are informed, believe and allege that each of these above described laws, regulations, statutes and/or enactments imposes a mandatory duty of care owing by defendant L.A. CO. to Plaintiffs, to be discharged by whatever means were reasonably necessary under the circumstances.

108. These Plaintiffs are informed, believe and allege that all times herein mentioned, defendant L.A. CO. breached each and every of its various mandatory duties of care owing to Plaintiffs as generally alleged herein so as to proximately cause Plaintiffs to suffer the injuries and damages as alleged herein.

109. These Plaintiffs are informed, believe and allege that said defendant's breaches of the mandatory duties of care owing to Plaintiffs as described herein was the result of theses defendants' failure to exercise reasonable diligence in the discharging of its respective duties owing to Plaintiffs as set forth herein.

110. These Plaintiffs are informed, believe and allege that said defendants' and each of their breaches of the mandatory duties of care owing to Plaintiffs as set forth herein establishes a presumption of the defendant' negligence pursuant to Evidence Code §669.

111. As a direct and proximate result of the negligence of defendants L.A. CO. and Does 1-25, inclusive, and each of them, these Plaintiffs were each hurt and injured in their respective strength and activity, sustaining injury to each of their nervous systems and persons, all of which injuries have caused, and continue to cause Plaintiffs great mental, physical and nervous pain and suffering. Plaintiffs are informed, believe and allege that these injuries will result in some permanent disability to each of them. As a result of such injuries, Plaintiffs have suffered general damages amounts according to proof.

112. As a further proximate result of the breaches of mandatory duties alleged against each defendant, Plaintiffs have incurred and will continue to incur medical, psychological and related

expenses in amounts according to proof. As a further proximate result of the negligence of each Defendant, each Plaintiff has sustained a loss of earning capacity in an amount according to proof.

**FOURTH CAUSE OF ACTION**

**[Breach of Duty of Care Owing By Reason of Special Relationship with Them]**

**(BY PLAINTIFFS NILTON, BRIAN & BELLA AS AGAINST**

**ALL DEFENDANTS & DOES 1-25)**

113. These Plaintiffs reallege each and every allegation set forth in Paragraphs 1-112 of their Complaint as though fully set forth herein and incorporates same by reference.

114. Plaintiffs are informed, believe and allege that by reason of LACO's assumption of these Plaintiffs' exclusive care, custody and control as ordered by the dependency court between approximately 4/29/2015 through 2/2/2019, and by reason of plaintiffs' tender ages, special needs, and inability to defend themselves, defendants have at all times mentioned held a special relationship with Plaintiffs and assumed an additional and independent affirmative duty to protect Plaintiffs' best interests while Plaintiffs were placed in the BAEZA certified foster home. This special relationship with these Plaintiffs imposes an independent affirmative duty of care owed by defendants to Plaintiffs to be discharged by any reasonably necessary means.

115. A special relationship also existed between NINOS FFA and each Plaintiff. As dependent children, Plaintiffs' safety was totally in the control of NINOS FFA. If NINOS FFA failed adequately to carry out its duties, it was foreseeable that harm would come to Plaintiffs.

119. Plaintiffs are informed, believe and allege that all times mentioned, defendants, and each of them, so negligently discharged their independent affirmative duty of care created by reason of their special relationship with Plaintiffs, and so failed to exercise their obligations under each of the above-referred laws, regulations, and/or enactments, so as to proximately cause Plaintiffs to suffer injuries and damages.

120. Plaintiffs are informed, believe and allege that each defendant's breaches of the special duties of care owing to them were the result of each defendant's failure to exercise reasonable diligence in the discharging of its respective duties owed to Plaintiffs. Each of these failures to discharge the mandatory duties of care owing to Plaintiffs establishes a presumption of the

defendants' negligence pursuant to Evidence Code §669.

**FIFTH CAUSE OF ACTION**

**[Violation of Civil Rights - 42 U.S.C. §1983]**

**(BY ALL PLAINTIFFS AS AGAINST ALL DEFENDANTS**

**EXCEPT THE BAEZAS & DOES 1-25)**

121.  Plaintiffs re-allege the allegations in Paragraphs 1-120 above.

122.  Plaintiffs are informed, believe and allege that in doing all of the things alleged, the LACO defendants acted under color of law of statutes, regulations, ordinances, customs or usages of the LACO and the State of California and in the performance of their official duties.

123. Plaintiffs are informed, believe and allege that in doing all of the things alleged, NINOS FFA acted under color of law of statutes, regulations, ordinances, customs or usages of the LACO and the State of California and in the performance of their duties.  NINOS FFA was performing a State function and was acting jointly with LACO.

124.  Plaintiffs are informed, believe and allege that it was the policy and practice of defendant LACO to employ certain CSWs and SCSWs, described in the foregoing paragraphs, in LACO's DCFS agency.

125. At all times, LACO had a duty to adequately train, direct, supervise, and control the actions of LACO DCFS' employees, such as the individual defendants and Does 1 - 25, inclusive, to enforce those rules and regulations set forth necessary for the protection and promotion of the Plaintiffs' respective best interests and the implementation of Plaintiffs' respective case plans, and to enforce compliance with the LACO Juvenile Court's orders in effect.

**INDIVIDUAL LIABILITY:**

126. At all times, the individual defendants and Does 1 - 25, inclusive, were acting within the scope of their employment and pursuant to the official policies, customs and practices of LACO and its DCFS. These unlawful policies and practices were enforced by LACO, and were the moving force, proximate cause, or affirmative link behind the conduct causing injury to Plaintiffs.

**MONELL CLAIM AGAINST LACO:**

127. At all times, LACO, who supervised the individuals who unlawfully violated Plaintiffs'

respective rights, developed, encouraged and tolerated the unlawful policies and practices described in the foregoing allegations. LACO acted knowingly and with deliberate indifference to the Constitutional rights of citizens, of Plaintiffs in particular, and maintained and permitted an official policy, custom and practice of permitting the occurrence of the types of wrongs set forth. These policies, customs and practices include, but are not limited to, knowingly permitting its agents and employees to act with deliberate indifference in the implementation of and in the failure to implement the various alleged laws, enactments, statutes, and regulations for its minor dependents such as Plaintiffs.

128.  Each of said Defendants' conduct as alleged threatened to deprive and did deprive Plaintiffs of their rights, privileges, and immunities as secured to them by the Constitution of the United States, including Plaintiffs' rights to safety and freedom from harm, and the rights not to be deprived of state or federally created liberty or property rights as guaranteed by the First, Fourth, Eighth, and Fourteenth Amendment to the United States Constitution.

129. In addition to economic and non-economic damages, said defendants' violations of Plaintiffs' civil rights as alleged entitles Plaintiffs to compensatory damages, attorney fees and other remedies, all of which are provided for in 42 U.S.C. § 1983, et seq..

## SIXTH CAUSE OF ACTION

### [Intentional Misconduct]

### [BY ALL PLAINTIFFS AS AGAINST DEFENDANTS MARCELA BAEZA & FERNANDO BAEZA AND DOES 1-25]

130. Plaintiffs reallege each and every allegation set forth in Paragraphs 1-129 in their Complaint as though fully set forth herein and incorporates same by reference.

131. Plaintiffs allege that individual defendants MARCELA BAEZA & FERNANDO BAEZA and Does 1-25 are the legal cause of damages to Plaintiffs. By the acts or omissions to act described fully above in this complaint, during the period of approximately 4/29/2015 through approximately 3/3/2018, in Lancaster, California, the BAEZA defendants and Does 1-25, and each of them, intentionally and recklessly caused the damages to Plaintiffs alleged herein.

132. As additional damages against these defendants, Plaintiffs allege they were guilty of

oppression, fraud, and malice as defined in Civil Code § 3294 and that Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish defendants.

**WHEREFORE**, Plaintiffs pray for Judgment as against each defendant, for each respective cause of action as set forth herein, as follows:

1. For All Causes of Action:

    A. For general damages for pain and suffering, emotional distress and mental suffering in an amount according to proof;

    B. For medical, psychological and related special expenses in a sum according to proof;

    C. For loss of earning capacity according to proof;

    D. For pre-judgment interest according to proof;

    E. For costs of suit herein incurred;

2. For the Fifth Cause of Action:

    A. All further compensatory damages, attorney fees and other remedies, all of which are provided for in 42 U.S.C. § 1983, et seq.,

3. For the Sixth Cause of Action:

    A. Punitive damages in an amount sufficient to punish and make an example of defendants; and,

4. For such other and further relief as the court may deem proper.

**Respectfully Submitted:**

DATED: _8·31·2020_

By: _____

**STEVEN P. BELTRAN**
**Attorneys for Plaintiffs**

# Exhibit "B"

20STCV33400

**SUMMONS**

*(CITACION JUDICIAL)*

SUM-100

| | FOR COURT USE ONLY |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF LOS ANGELES, a governmental entity;
JENNIFER MAGALLANES, an individual; ELIZABETH RAMOS,
an individual; LUIS CARDENAS, an individual;

*(handwritten: I, Nimik Cholian accepted Service on behalf of Elizabeth Ramos in HQ at 1:50 pm 10-6-2020)*

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MITZY P.; NILTON P.T.; BRIAN P.T.; and, BELLANIRA P.,
by and through their Guardian Ad Litem Richard L. Solomon, Esq.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp),* your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org),* the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp),* or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* | 20STCV33400 |

Los Angeles County Superior Court
111 N. Hill St.
Los Angeles, CA. 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven P. Beltran, Esq. 75813 Beltran Smith, LLP
8200 Wilshire Blvd., Ste. 200 (323) 935-5795
Beverly Hills, CA. 90211-2348

| DATE: | Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* 09/25/2020 | | *(Secretario)* M. Valenzuela | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Elizabeth Ramos
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 10/06/20

Page 1 of 1

| Form Adopted for Mandatory Use | CEB | Essential | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|---|
| Judicial Council of California | ceb.com | Forms | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | | | |

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mitzy P. v LACO et al | |

## INSTRUCTIONS FOR USE

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box.  Use a separate page for each type of party.)*:

☐ Plaintiff      ☒ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

NINOS LATINOS UNIDOS, INC., a corporation duly organized under the laws of the State of California; MARCELA BAEZA, an individual; FERNANDO BAEZA, an individual; and DOES 1-25,

Page_____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

CEB® | Essential
ceb.com | Forms®

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

*[handwritten]* I, Rimik Choihen accepted service on behalf of Luis Cardenae at HQ at 1:50pm 10-6-2020

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF LOS ANGELES, a governmental entity;
JENNIFER MAGALLANES, an individual; ELIZABETH RAMOS,
an individual; LUIS CARDENAS, an individual;

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MITZY P.; NILTON P.T.; BRIAN P.T.; and, BELLANIRA P.,
by and through their Guardian Ad Litem Richard L. Solomon, Esq.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en fonnalo legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles County Superior Court<br>111 N. Hill St.<br>Los Angeles, CA. 90012 | **CASE NUMBER**<br>*(Número del Caso):*<br>20STCV33400 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven P. Beltran, Esq. 75813 Beltran Smith, LLP
8200 Wilshire Blvd., Ste. 200 (323) 935-5795
Beverly Hills, CA. 90211-2348

| DATE:<br>*(Fecha)* 09/25/2020 | Sherri R Carter Executive Officer / Clerk of Court | Clerk, by<br>*(Secretario)* M. Valenzuela | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Luis Cardenas
   under: ☐ CCP 416.10 (corporation)
   ☐ CCP 416.20 (defunct corporation)
   ☐ CCP 416.40 (association or partnership)
   ☐ other *(specify):*
   ☐ CCP 416.60 (minor)
   ☐ CCP 416.70 (conservatee)
   ☒ CCP 416.90 (authorized person)

4. ☒ by personal delivery on *(date):* 10/06/20

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB
ceb.com

Essential
Forms

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>Mitzy P. v LACO et al | CASE NUMBER: |
| --- | --- |

### INSTRUCTIONS FOR USE

➢ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➢ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff      ☒ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

NINOS LATINOS UNIDOS, INC., a corporation duly organized under the laws of the State of California;
MARCELA BAEZA, an individual; FERNANDO BAEZA, an individual; and DOES 1-25,

Page_____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

CEB | Essential
ceb.com | eForms

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

# Exhibit "C"

**SUMMONS**

*(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF LOS ANGELES, a governmental entity;
JENNIFER MAGALLANES, an individual; ELIZABETH RAMOS,
an individual; LUIS CARDENAS, an individual;

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MITZY P.; NILTON P.T.; BRIAN P.T.; and, BELLANIRA P.,
by and through their Guardian Ad Litem Richard L. Solomon, Esq.

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES
FILED

2020 OCT -6  P 1: 26

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER
*(Número del Caso):*  20STCV33400

Los Angeles County Superior Court
111 N. Hill St.
Los Angeles, CA. 90012
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven P. Beltran, Esq. 75813 Beltran Smith, LLP
8200 Wilshire Blvd., Ste. 200 (323) 935-5795
Beverly Hills, CA. 90211-2348

DATE:  09/25/2020
*(Fecha)*

Sherri R. Carter Executive Officer / Clerk of Court

Clerk, by  M. Valenzuela  , Deputy
*(Secretario)* — *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Los Angeles County
under: ☐ CCP 416.10 (corporation)
☐ CCP 416.20 (defunct corporation)
☐ CCP 416.40 (association or partnership)
☐ other *(specify):*
☐ CCP 416.60 (minor)
☐ CCP 416.70 (conservatee)
☐ CCP 416.90 (authorized person)

4. ☑ by personal delivery on *(date):* 10/06/20

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CEB Essential Forms
ceb.com

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mitzy P. v LACO et al | |

## INSTRUCTIONS FOR USE

➢ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➢ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff     [X] Defendant     ☐ Cross-Complainant     ☐ Cross-Defendant

NINOS LATINOS UNIDOS, INC., a corporation duly organized under the laws of the State of California; MARCELA BAEZA, an individual; FERNANDO BAEZA, an individual; and DOES 1-25,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]
CEB® Essential
ceb.com Forms®

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within entitled action.  My business address is 500 S. Grand Avenue, 19th Floor, Los Angeles, CA 90071.

On November 4, 2020. I served the foregoing document(s) described as:

## NOTICE OF REMOVAL OF ACTION

upon the interested parties in this action by placing the true copies thereof enclosed in sealed envelopes addressed to the following persons:

**PLEASE SEE ATTACHED SERVICE LIST**


**BY MAIL**
  _X_  I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

**BY ELECTRONIC SERVICE**
  _X_  Only by e-mailing the document(s) to the persons at the e-mail address(es) listed that, during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail.  No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission

Executed on November 4, 2020, at Los Angeles, California.

**FEDERAL**
  _X_  I declare, under penalty of perjury under the laws of the United States of America that the above is true and correct.

GABRIELLE DURAN                    */s/ Gabrielle Duran*

- 4 -
NOTICE OF REMOVAL OF ACTION

## SERVICE LIST

Steven P. Beltran, Esq.
BELTRAN SMITH MacKENZIE LLP
8200 Wilshire Blvd., Suite 200
Beverly Hills, CA 90211-2348
(323) 935-5795
(323) 935-5975 fax
Sbeltran007@gmail.com
Attorneys for Plaintiffs


Rosa Hirji, Esq.
Alexander Rodriguez, Esq.
LAW OFFICES OF HIRJI & CHAU, LLP
5173 Overland Avenue
Culver City, CA 90230
(310) 391-0330
(310) 943-0311
rosa@rkhlawoffice.com
alex@rkhlawoffice.com
Attorneys for Plaintiffs


Katharine L. Spaniac, Esq.
Yolanda E. Lopez, Esq.
CLOUSE SPANIAC
8038 Haven Avenue, Suite E
Rancho Cucamonga, CA 91730
(909) 941-3388
(909) 941-3389 fax
klspaniac@csattys.com
yelopez@csattys.com
Attorneys for Defendant NINOS LATINOS UNIDOS, INC

NOTICE OF REMOVAL OF ACTION